COZEN O'CONNOR
BY:    Melanie A. Miller (MM 2992)
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

Attorneys for Plaintiff
Celgene Corporation

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| **Celgene Corporation,** | |
| **Plaintiff,** | |
| v. | Civil Action No.: _____ |
| **Medibridge India PTY and DOES 1-10,** | **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## COMPLAINT

Plaintiff, Celgene Corporation ("Celgene"), by and through its undersigned attorneys, for its complaint against Medibridge India PTY ("Medibridge") and DOES 1-10 ("DOES") (collectively the "Medibridge Defendants") alleges as follows:

### Parties

1.   Plaintiff Celgene is a Delaware corporation with a place of business at 86 Morris Avenue, Summit, New Jersey 07901.

2.   Defendant Medibridge is an Indian entity with a mailing address at Rana Pratap Bagh, New Delhi -- 110001 and email addresses at medibridgeindia@gmail.com; customercare@cancercurepharmacy.com.

3. Defendant Medibridge owns and controls a website entitled cancercurepharmacy.com ("Infringing Website") whereby generic unauthorized and unregulated lenalidomide and thalidomide are improperly imported into the United States to United States consumers.

4. The true names and capacities, whether individual, corporate, associate, or otherwise of DOES are unknown to Celgene at this time and Celgene therefore sues the DOES under such fictitious names. When the true names, capacities, and activities of the DOES are ascertained, Celgene will amend this Complaint accordingly. Celgene is informed and believes and thereon alleges that all of the Medibridge Defendants are responsible in some manner for the events and happenings referred to herein, and that Celgene's damages as alleged herein were proximately caused by the Medibridge Defendants.

## Jurisdiction and Venue

5. This action arises under the Acts of Congress under the Trademark and Lanham Acts, Title 15 U.S.C. § 1051, *et seq.*, and common law. As such, this Court has subject matter jurisdiction under the provisions of Title 28 U.S.C. §§ 1331 and 1338 because this action involves federal questions of law. A substantial part of the events giving rise to this action have occurred and continue to occur in this judicial district. As such, the Medibridge Defendants should reasonably expect that their activities might have consequences herein.

6. This Court has original jurisdiction over the claims brought under federal law pursuant to 28 U.S.C. §§ 1331 and 1338(b) and 15 U.S.C. § 1121.

7. This court has supplemental jurisdiction over the claims brought under the common law pursuant to 28 U.S.C. § 1338(b) and § 1367(a).

8. The Medibridge Defendants are subject to this Court's personal jurisdiction because, on information and belief, (1) they do substantial business in this district; and (2) they

regularly solicit business from, do business with, and derive revenue from goods and/or services provided to customers in this district.

9. Venue is proper in this judicial district pursuant to Title 28 U.S.C. §§ 1391 (b) (2) and (c).

### Background as to Celgene's Business and Its Intellectual Property

10. Celgene is a global biopharmaceutical company which is the owner of all proprietary rights in and to the drugs REVLIMID® and THALOMID®.

### Celgene's Revlimid® Drug

11. Celgene is the owner of all proprietary rights in and to the drug REVLIMID®, which is a drug utilized in the treatment of various cancers. REVLIMID® fights abnormal cells in the bone marrow and allows normal cells to perform their functions. The active ingredient in REVLIMID® is called lenalidomide. REVLIMID® is used by patients with multiple myeloma (mm) and for patients with a condition called del 5q MDS and who require red blood cell transfusions to manage anemia (low red blood cell counts).

12. The REVLIMID® drug is approved by the Food and Drug Administration ("FDA"), subject to restricted distribution, and is currently available in the marketplace in the United States. The FDA has approved REVLIMID®, which is taken orally, for previously treated multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS).

13. Because of the potential toxicity of REVLIMID®, and in an effort to minimize the chance of fetal exposure to REVLIMID®, REVLIMID® is approved for marketing only under a special restricted distribution program approved by the FDA. This program is called REVLIMID REMS® in the United States. Under these restricted distribution programs, only prescribers and pharmacists registered with the program are allowed to prescribe and dispense

REVLIMID®. In addition, patients must be advised of, agree to, and comply with the requirements of the REVLIMID REMS® program in order to receive REVLIMID®.

14. Celgene is the owner of all trademark rights in and to the REVLIMID® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 3,255,216 for REVLIMID covering "pharmaceutical preparations for the treatment of certain cancers" in International Class 5;

- U.S. Reg. No. 3,074,309 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 2,925,808 for REVLIMID covering "pharmaceutical preparations, namely, cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,169,244 for REVLIMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations that modulate the immune system" in International Class 5;

15. Celgene's U.S. Reg. No. 2925808 for REVLIMID has acquired incontestable status. 15 U.S.C. §1065. Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

16. Celgene has expended significant time, energy and resources in the protection and promotion of its REVLIMID® brand throughout the world.

17. The effectiveness of the REVLIMID® drug, an immunomodulatory agent, for previously treated patients with multiple myeloma (mm) and for del 5q myelodysplastic syndrome (MDS), and for patients who require red blood cell transfusions to manage anemia (low red blood cell counts) has delivered results in terms of treatment, and has resulted in significant commercial success.

18. Through Celgene's use of the REVLIMID® mark in connection with its drug, REVLIMID® has become associated in the minds of the public with Celgene.

19. Celgene's REVLIMID® mark is strong and it is inherently distinctive.

20. Celgene's REVLIMID® mark is famous and represents the exceedingly valuable goodwill of Celgene.

### Celgene's Thalomid® Drug

21. THALOMID® is a drug utilized in the treatment of multiple myeloma and erythema nodosum. THALOMID® is an immunomodulatory agent, which means that it affects the levels of certain chemicals in the body that control the activity of cells, such as slowing or stopping the growth of new blood vessels. The active ingredient in THALOMID® is thalidomide.

22. The THALOMID® drug is approved by the FDA, subject to restricted distribution, and is currently available in the marketplace in the United States. The FDA has approved THALOMID®, which is taken orally, for the treatment of patients with newly diagnosed multiple myeloma (mm) and for the acute treatment of the cutaneous manifestations of moderate to severe erythema nodosum leprosum (ENL).

23. Because of the potential toxicity of THALOMID®, and in an effort to minimize the chance of fetal exposure to THALOMID®, THALOMID® is approved for marketing only under a special restricted distribution program approved by the FDA. This program is called THALOMID REMS® in the United States. Under these restricted distribution programs, only prescribers and pharmacists registered with the programs are allowed to prescribe and dispense THALOMID®. In addition, patients must be advised of, agree to, and comply with the requirements of the THALOMID REMS® program in order to receive THALOMID®.

24. Celgene is the owner of all trademark rights in and to the THALOMID® mark throughout the world, including the following registrations in the United States:

- U.S. Reg. No. 2,242,095 for THALOMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs" in International Class 5;

- U.S. Reg. No. 3,171,612 for THALOMID & Design covering "pharmaceutical preparations, namely cytokine inhibitory drugs; pharmaceutical preparations for the treatment of certain cancers; pharmaceutical preparations that modulate the immune system" in International Class 5;

- U.S. Reg. No. 3,554,067 for THALOMID covering "pharmaceutical preparations, namely cytokine inhibitory drugs" in International Class 5; and

25. Celgene's U.S. Reg. No. 3,554,067 for THALOMID has acquired incontestable status. 15 U.S.C. §1065. Thus, the registration for this mark shall be conclusive evidence of the validity of the registered mark, of Celgene's ownership of the mark, and of Celgene's exclusive right to use the registered mark in commerce in connection with the pharmaceuticals specified in the affidavits filed under the provisions of 15 U.S.C. § 1065 and/or the renewal applications filed under the provisions of 15 U.S.C. § 1059.

26. Celgene has expended significant time, energy and resources in the protection and promotion of its THALOMID® brand throughout the world.

27. The effectiveness of the THALOMID® drug, an immunomodulatory agent, for the treatment of multiple myeloma and erythema nodosum has delivered results in terms of treatment, and has resulted in significant commercial success.

28. Through Celgene's use of the THALOMID® mark in connection with its drug, THALOMID® has become associated in the minds of the public with Celgene.

29. Celgene's THALOMID® mark is strong and it is inherently distinctive.

30. Celgene's THALOMID® mark is famous and represents the exceedingly valuable goodwill of Celgene.

### Background as to the Medibridge Defendants' Unlawful Conduct

31. Medibridge, through the Infringing Website, sells branded and generic drugs to consumers throughout the United States.

32. The Infringing Website is active and solicits business throughout the United States, and sells to consumers throughout the United States, including consumers in the District of New Jersey, a variety of drugs including lenalidomide and thalidomide.

33. The Medibridge Defendants utilize, without authorization, the REVLIMID® mark in connection with the sale of lenalidomide and the THALOMID® mark in connection with the sale of thalidomide.

34. The Medibridge Defendants are not registered or approved pharmacies under the United States restricted distribution programs, REVLIMID REMS® and THALOMID REMS®.

35. The Medibridge Defendants are dispensing lenalidomide and thalidomide to patients who are not registered with Celgene, and, as such, do not meet the conditions of the American government mandated restricted REVLIMID REMS® and THALOMID REMS® programs.

36. The Medibridge Defendants' distribution, without authorization, of lenalidomide and thalidomide represents serious health and safety, and consumer protection issues.

37. The Infringing Website also uses the REVLIMID® and THALOMID® marks as keywords on the website and in connection with the sale of lenalidomide and thalidomide.

38. By utilizing the search function at the Infringing Website, a consumer can search for the term REVLIMID® and THALOMID® and correspondingly purchase unauthorized and unregulated lenalidomide and thalidomide.

39. The orders for lenalidomide and thalidomide placed, processed and completed by the Medibridge Defendants, and the lenalidomide and thalidomide drugs offered for sale via the

Infringing Website, are not manufactured by Celgene, and no association or relationship exists between Celgene and the Medibridge Defendants.

40. The Medibridge Defendants' unauthorized use of the REVLIMID® and THALOMID® marks deceives the consumer into believing that they are purchasing genuine Celgene drugs.

41. The Medibridge Defendants' unauthorized use of the REVLIMID® and THALOMID® marks falsely suggests the existence of an association or sponsorship relationship with Celgene.

42. The Medibridge Defendants' use of the REVLIMID® and THALOMID® marks will likely result in consumer confusion in the marketplace with regards to the source and/or sponsorship of the REVLIMID® and THALOMID® drugs.

43. Given the restricted distribution limitations provided in connection with the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

44. Given the serious health and safety issues inherent in taking the REVLIMID®, and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

45. The Medibridge Defendants' continued use of the REVLIMID® and THALOMID® marks is undermining Celgene's brand identity and the positive public perception of Celgene's REVLIMID® and THALOMID® drugs. Celgene's goodwill is extremely valuable to Celgene and the Medibridge Defendants' continued unauthorized use of REVLIMID® and THALOMID® is harming Celgene.

46. The Medibridge Defendants have not received authorization, or obtained a license, from Celgene to use any of Celgene's trademarks. Similarly, Celgene has not acquiesced to the Medibridge Defendants' use of the REVLIMID® and THALOMID® marks.

47. Since May of 2015, Celgene has requested that the Infringing Website cease and desist from directly and/or indirectly infringing Celgene's REVLIMID® and THALOMID® marks and cease the unauthorized distribution of lenalidomide and thalidomide.

48. Despite receiving notice of their infringing activities, the Medibridge Defendants, via the Infringing Website, continue to willfully use the REVLIMID® and THALOMID® marks and continue to distribute lenalidomide and thalidomide without authorization.

49. The Medibridge Defendants' activities are likely to cause confusion or mistake among prospective consumers, are likely to dilute Celgene's REVLIMID® and THALOMID® marks, and are likely to mislead and/or deceive prospective consumers with respect to the origin and quality of the lenalidomide and thalidomide sold at the Infringing Website.

50. The Medibridge Defendants' unauthorized use of Celgene's REVLIMID® and THALOMID® marks constitutes unfair competition.

51. The Medibridge Defendants' unauthorized distribution of lenalidomide, in conjunction with Celgene's REVLIMID® mark, and thalidomide, in conjunction with Celgene's THALOMID® mark, constitutes unfair competition.

52. The Medibridge Defendants' unauthorized distribution of lenalidomide and thalidomide results in serious health and safety issues directly related to Celgene's REVLIMID® and THALOMID® drugs that will irreparably damage the goodwill inherent in Celgene's REVLIMID® and THALOMID® marks.

## COUNT I – TRADEMARK INFRINGEMENT

53. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

54. The federal registrations of Celgene's REVLIMID® and THALOMID® marks evidences Celgene's exclusive right to use its REVLIMID® and THALOMID® marks in connection with pharmaceutical preparations, namely, cytokine inhibitory drugs; and pharmaceutical preparations that modulate the immune system. 15 U.S.C. § 1115.

55. The federal registrations for Celgene's REVLIMID® and THALOMID® marks conclusively evidence the validity of the registered marks, Celgene's ownership of marks, and Celgene's exclusive right to use the REVLIMID® and THALOMID® marks in commerce. 15 U.S.C. §§ 1065, 1115.

56. The Medibridge Defendants' utilize, without authorization, the REVLIMID® and THALOMID® marks in connection with the unauthorized sale of lenalidomide and thalidomide.

57. The Medibridge Defendants' use of REVLIMID and THALOMID is identical in sound, meaning and appearance to Celgene's REVLIMID® and THALOMID® marks. The marks create the same commercial impression and are confusingly similar.

58. The Medibridge Defendants are marketing and distributing lenalidomide and thalidomide using the names REVLIMID® and THALOMID® to consumers in the United States.

59. The Medibridge Defendants' adoption and use of the REVLIMID® and THALOMID® marks in connection with the sale of lenalidomide and thalidomide is likely to cause confusion, or mistake, or to deceive as to the source, affiliation, or sponsorship with Celgene's REVLIMID® and THALOMID® marks in violation of 15 U.S.C. § 1051 et seq., specifically §§ 1114-18.

60. This unauthorized use by the Medibridge Defendants constitutes infringement of Celgene's registered marks, described above, in violation of 15 U.S.C. § 1051 et seq., to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill.

61. The activities of the Medibridge Defendants complained of herein constitute willful and intentional infringement of Celgene's federally registered REVLIMID® and THALOMID® marks, in derogation of Celgene's rights in violation of 15 U.S.C. §§ 1114-18. Acts of infringement commenced and have continued in spite of the Medibridge Defendants' knowledge that the use of Celgene's REVLIMID® and THALOMID® marks was and is in contravention of Celgene's rights.

62. Celgene has not given the Medibridge Defendants consent directly or indirectly to use the REVLIMID® and THALOMID® marks, or any mark similar thereto.

63. The Medibridge Defendants' conduct has caused and, if not enjoined, will continue to cause, irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

64. Celgene's damages from the aforesaid unlawful actions of the Medibridge Defendants, to the extent ascertainable, have not yet been determined.

65. Celgene seeks attorney's fees and costs given the willful conduct of the Medibridge Defendants.

66. Celgene seeks treble damages given the willful conduct of the Medibridge Defendants.

## COUNT II – FEDERAL UNFAIR COMPETITION

67. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

68. Celgene's REVLIMID® and THALOMID® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

69. The Medibridge Defendants utilize, without authorization, the REVLIMID® and THALOMID® marks in connection with the unauthorized sale of lenalidomide and thalidomide.

70. The lenalidomide and thalidomide drugs offered for sale by the Medibridge Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Medibridge Defendants.

71. Given the restricted distribution limitations provided in connection with the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

72. Given the serious health and safety issues inherent in taking the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

73. Celgene has not given consent directly or indirectly to the Medibridge Defendants to use its REVLIMID® and THALOMID® marks, or any mark similar thereto.

74. The Medibridge Defendants' activities are likely to cause confusion, or to cause mistake, or to deceive, causing great harm to Celgene's reputation and goodwill.

75. The Medibridge Defendants have unfairly competed with Celgene in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide and thalidomide under the designations REVLIMID and THALOMID and by selling lenalidomide and thalidomide outside the restricted distribution programs and in violation of required health and safety guidelines. This unauthorized use by the Medibridge Defendants constitutes unfair competition to the substantial and irreparable injury of the public and of Celgene's marks, business reputation, and goodwill. 15 U.S.C. § 1125.

76. The activities of the Medibridge Defendants complained of herein constitute willful and intentional tort, in derogation of Celgene's rights. Acts of unfair competition commenced and have continued in spite of the Medibridge Defendants' knowledge that the use of Celgene's REVLIMID® and THALOMID® marks was and is in contravention of Celgene's rights.

77. The Medibridge Defendants' conduct has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Celgene in its marks and in its business, reputation, and goodwill.

78. Celgene's damages from the aforesaid unlawful actions of the Medibridge Defendants, to the extent ascertainable, have not yet been determined.

79. Celgene seeks attorney's fees and costs given the willful conduct of the Medibridge Defendants.

80. Celgene seeks treble damages given the willful conduct of the Medibridge Defendants.

## COUNT III – FALSE DESIGNATION OF ORIGIN

81. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

82. This cause of action is for false designation of origin pursuant to 15 U.S.C. § 1125 *et seq*.

83. Celgene's REVLIMID® and THALOMID® marks are distinctive and have acquired secondary meaning and significance in the minds of the relevant public.

84. The Medibridge Defendants utilize, without authorization, the REVLIMID® and THALOMID® marks in connection with the sale of unauthorized lenalidomide and thalidomide.

13

85. The lenalidomide and thalidomide drugs offered for sale by the Medibridge Defendants are not manufactured by Celgene, and no association or relationship exists between Celgene and the Medibridge Defendants.

86. Given the restricted distribution limitations provided in connection with the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

87. Given the serious health and safety issues inherent in taking the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

88. Celgene has not given the Medibridge Defendants consent directly or indirectly to use its REVLIMID® and THALOMID® marks, or any marks similar thereto.

89. The Medibridge Defendants' adoption and use of the REVLIMID® and THALOMID® marks is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of the Medibridge Defendants with Celgene, and Celgene is likely to be damaged by such actions. Accordingly, such conduct constitutes false designation of origin under Section 43(a) of the Lanham Act.

90. The Medibridge Defendants have caused confusion in interstate commerce and in this district by various acts, including marketing, offering for sale, and selling lenalidomide and thalidomide under the designations REVLIMID and THALOMID and by selling lenalidomide and thalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

91. The Medibridge Defendants had knowledge of the falsity of the designation of origin in that they knew, among other things, of Celgene's reputation and good will developed through Celgene in its REVLIMID® and THALOMID® marks.

92. These actions of the Medibridge Defendants are likely to confuse, mislead, and deceive members of the public as to the origin or sponsorship of the Medibridge Defendants and Celgene in violation of 15 U.S.C. § 1125(a).

93. The aforementioned activities by the Medibridge Defendants constitute unfair competition and unfair trade practices, and are likely to cause confusion, mistake, or deception in violation of 15 U.S.C. § 1125(a).

94. The Medibridge Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

95. Celgene's damages from the aforesaid unlawful actions of the Medibridge Defendants, to the extent ascertainable, have not yet been determined.

96. Celgene seeks attorney's fees and costs given the willful conduct of the Medibridge Defendants.

97. Celgene seeks treble damages given the willful conduct of the Medibridge Defendants.

## COUNT IV -- DILUTION

98. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

99. This cause of action is for dilution pursuant to 15 U.S.C. § 1125(c).

100. Celgene's REVLIMID® and THALOMID® marks are distinctive.

101. Through Celgene's longstanding use of its REVLIMID® and THALOMID® marks on its drugs and prominently displayed in its promotional literature, and through the significant amount, volume and geographic extent of Celgene's sales, Celgene's REVLIMID® and THALOMID® marks are famous.

102. The Medibridge Defendants' utilize, without authorization, the REVLIMID® and THALOMID® marks in connection with the unauthorized sale of lenalidomide and thalidomide.

103. The lenalidomide and thalidomide offered for sale by the Medibridge Defendants is not manufactured by Celgene, and no association or relationship exists between Celgene and the Medibridge Defendants.

104. Given the restricted distribution limitations provided in connection with the REVLIMID® and THALOMID® drugs, any such unauthorized distribution could result in serious health consequences for consumers and could have catastrophic affects.

105. The Medibridge Defendants' adoption and use of the REVLIMID and THALOMID marks is likely to cause dilution of Celgene's REVLIMID® and THALOMID® marks. Accordingly, such conduct violates 15 U.S.C. § 1125(c).

106. The Medibridge Defendants' conduct described above has caused and, if not enjoined, will continue to cause irreparable damage to the intellectual property rights of Celgene, and its business, reputation and goodwill.

107. Celgene's damages from the aforesaid unlawful actions of the Medibridge Defendants, to the extent ascertainable, have not yet been determined.

**COUNT V – VIOLATION OF NEW JERSEY DECEPTIVE TRADE PRACTICES ACT**

108. Celgene repeats and re-alleges, and incorporates by reference, the foregoing paragraphs as though the same were fully set forth at length herein.

109. The Medibridge Defendants have practiced deceptive business and trade practices in this district by various acts, including marketing, offering for sale, and selling lenalidomide and thalidomide under the designation REVLIMID® and THALOMID® and by selling lenalidomide and thalidomide outside the restricted distribution programs and in violation of required health and safety guidelines.

110. The Medibridge Defendants' aforesaid conduct constitutes unfair, unlawful, and deceptive business and trade practices in violation of N.J. Stat. § 56:8-2.

111. Many of these wrongful acts occurred in the State of New Jersey and harmed the New Jersey public at large.

112. These wrongful acts have proximately caused and continue to cause Celgene substantial injury, including loss of customers, dilution of its goodwill, confusion of potential customers, injury to its reputation, and diminution in the value of its products and technology. These actions will cause imminent irreparable harm and injury to Celgene, the amount of which will be difficult to ascertain, if they continue.

113. Celgene is without an adequate remedy at law.

114. Celgene is entitled to an injunction restraining the Medibridge Defendants, and all persons or entities acting in concert with it, from engaging in further such unlawful and deceptive conduct.

115. Celgene is entitled to recover from the Medibridge Defendants the damages sustained by it as a result of the Medibridge Defendants' wrongful acts as hereinabove alleged. The amount of such damages cannot be determined at this time.

116. Celgene is further entitled to recover from the Medibridge Defendants the gains, profits, and advantages it has obtained as a result of their wrongful acts as hereinabove alleged. Celgene is at present unable to ascertain the full extent of these gains, profits, and advantages, but Celgene is informed and believes and based thereon alleges that the Medibridge Defendants have obtained such gains, profits, and advantages in an amount thus far undetermined, but in excess of $75,000.

117.     The conduct of the Medibridge Defendants was and is fraudulent, oppressive, malicious, and in conscious disregard of the rights of Celgene, and Celgene is therefore entitled to punitive damages against the Medibridge Defendants.

## PRAYERS FOR RELIEF

**WHEREFORE**, Celgene prays for relief against the Medibridge Defendants as follows:

(1)     That the Court preliminary and permanently enjoin and restrain the Medibridge Defendants, their officers, directors, agents, employees and all persons in active concert or participation with it who receives actual notice of the injunction, by personal service or otherwise, from doing, abiding, causing or abetting any of the following:

(a)     infringing, inducing or contributing to the infringement of Celgene's intellectual property;

(b)     engaging in any acts or activities directly or indirectly calculated to infringe the REVLIMID® and THALOMID® marks;

(c)     using in selling, offering for sale, promoting, advertising, marketing or distributing of press releases, articles, advertisements or marketing materials that infringe upon Celgene's rights;

(d)     using any designation, term, mark, slogan, logo, configuration or design that is confusingly similar to the REVLIMID® and THALOMID® marks; and

(e)     otherwise competing unfairly with Celgene.

(2)     That the Court find that the Medibridge Defendants are infringing Celgene's REVLIMID® and THALOMID® marks, are diluting Celgene's REVLIMID® and THALOMID® marks, are falsely designating the origin of their goods, and are competing unfairly with Celgene.

18

(3)     That the Court Order the Medibridge Defendants to deliver up to Celgene for destruction, at the Medibridge Defendants' expense, all newsletters, articles, web site materials, literature, brochures, promotional materials, advertisements and other communications to the public in the possession or under the control of the Medibridge Defendants, and any other material or any representations that are or may contain designations similar to the REVLIMID® and THALOMID® marks.

(4)     That the Court Order the Medibridge Defendants to account for and pay to Celgene the damages to which Celgene is entitled as a consequence of the infringement.

(5)     That the Court Order the Medibridge Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Medibridge Defendants' unfair competition.

(6)     That the Court Order the Medibridge Defendants to account for and to pay over to Celgene all damages suffered by Celgene as a result of the Medibridge Defendants' false designation of origin.

(7)     That the Court Order the Medibridge Defendants to account for and pay over to Celgene all profits received by the Medibridge Defendants from their unlawful acts, and for their deceptive trade practices, in an amount consisting of the gains, profits, and advantages the Medibridge Defendants have obtained as a result of their wrongful acts as hereinabove alleged, which damages will be proven with greater precision at trial.

(8)     That the Court enter an order placing reasonable but effective restrictions on the future transactions and activities of the Medibridge Defendants so as to prevent fraud on the Court and so as to ensure the capacity of the Medibridge Defendants to pay, and the prompt payment of, any judgment entered against the Medibridge Defendants in this action.

(9) That the Court award Celgene its compensatory, incidental, and consequential damages.

(10) That the Court award Celgene enhanced, treble, and/or punitive damages.

(11) That the Court award Celgene its reasonable attorney's fees and the costs of this action.

(12) That the Court grant Celgene such other relief as is just and proper.

## DEMAND FOR JURY TRIAL

Celgene demands a trial by jury on all triable issues of fact.

Dated: January 28, 2016

Respectfully submitted by:

COZEN O'CONNOR

/s/ Melanie A. Miller
Melanie A. Miller (MM 2992)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-2714- Telephone
(215) 701-2414 – Facsimile
mmiller@cozen.com – E-Mail

and

Camille M. Miller (to be admitted pro hac vice)
J. Trevor Cloak (to be admitted pro hac vice)
Cozen O'Connor
One Liberty Place
1650 Market Street, Suite 2800
Philadelphia, PA  19103
(215) 665-7273 – Telephone
(215) 701- 2273 – Facsimile
cmiller@cozen.com – E-Mail
jcloak@cozen.com – E-Mail

*Attorneys for Plaintiff, Celgene Corporation*